## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHRISTOPHER GRAPES, #314576            :

    Petitioner                              :

       v.                                   :        Civil Action No. PJM-06-530

CATHLEEN GREEN                         :
      and
THE ATTORNEY GENERAL OF                :
THE STATE OF MARYLAND
                                       :
    Respondents                   ..o0o..

### MEMORANDUM OPINION

Pending is Christopher Grapes's pro se 28 U.S.C. § 2254 motion for writ of habeas corpus challenging his conviction in the Circuit Court for St. Mary's County for felony theft. Respondents, Kathleen Green, Warden of the Eastern Correctional Institution, and J. Joseph Curran, Jr., Attorney General of the State of Maryland, by their counsel, have filed an Answer in opposition to which Petitioner has filed a Reply.

Upon careful review of the pleadings, transcripts, and applicable law, the Court determines that an evidentiary hearing is not required. *See* 28 U.S.C. 2254(e)(2); Rule 8(a), "Rules Governing Section 2254 Cases in the United States District Courts." For the reasons that follow, the Motion is denied and dismissed.

### I.  Procedural Background

On March 3, 2003, Grapes pleaded guilty to one count of theft over $500 in the Circuit Court for St. Mary's County.[1] On June 13, 2003, the Circuit Court sentenced him to ten years incarceration.[2]

---

[1]      The facts, as presented by the State's Attorney at the plea colloquy were that Grapes had a knife and walked through the door of a residence belonging to Mrs. Langeluttig. He took numerous power tools. Nobody was in the residence at the time of the theft. Police investigators

Grapes filed for leave to appeal the entry of his guilty plea, alleging: 1) he was "not afforded time to get counsel"; 2) his presentence investigation report was in error; and 3) he was not "given a motions hearing after it was postponed." Resp. Ex. 4.   By unreported opinion filed on April 26, 2004, the Court of Special Appeals of Maryland summarily denied his application for leave to appeal.  Resp. Ex. 5.

On September 7, 2004, Grapes filed for post-conviction relief in the Circuit Court for St. Mary's County.   As supplemented, the post-conviction petition alleged: 1) the guilty plea was not entered knowing and voluntarily; 2) the prosecutor breached the plea agreement by recommending a sentence in excess of the agreement;  and 3) the sentence imposed by the trial court was improper because it was based on incorrect information contained in the presentence investigation report. Resp. Ex. 6-9.[3]   The Circuit Court conducted a post-conviction hearing on March 8, 2005.

On May 11, 2005, the Circuit Court denied post-conviction relief.  Resp. Ex. 9.  Grapes did not file for leave to appeal the post-conviction court's ruling.

## II.  Threshold Considerations

### A.  Procedural Default

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court.  *See  Rose v. Lundy*, 455 U. S. 509, 521 (1982).  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim.  *See  O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by raising

---

found fingerprints at the residence which matched Grapes.  Police also contacted pawn shops and "got positive hits" for items pawned by Grapes.  Plea Transcript, Resp. Ex. 2 at 6-7.

[2]      Grapes was represented by counsel at sentencing.

[3]      Grapes was represented by counsel during post-conviction proceedings.

certain claims on direct appeal and with other claims by way of post-conviction proceedings. Exhaustion is not required if at the time a federal habeas corpus petition is filed, the petitioner has no available state remedy. *See Teague v. Lane*, 489 U. S. 288, 297-98 (1989).

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post- conviction relief). The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. *See Murray*, 477 U.S. at 495; *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977). Even where a petitioner fails to show cause and prejudice for a procedural default a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo,* 513 U. S.298, 314 (1995). The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 496. [4]

**B. Standard of Review**

This Petition is subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended, which provides a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7. (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005) (stating habeas

---

[4] By order signed August 10, 2006, the Court granted Grapes thirty days to reply to Respondents' assertions of procedural default. In his reply, Grapes neither demonstrates cause and prejudice to excuse procedural default nor explains why he is actually innocent of the offense and the miscarriage of justice exception applies.

court's standard for evaluating state-court ruling is highly deferential).  A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or  2)  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

In *Williams v. Taylor,* 529 U.S. 362 (2000), the Supreme Court explained that  a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court  identifies the correct  governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-410.  Furthermore, when a state court has made a  finding of fact, it is presumed to be correct and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## III.  Analysis

Grapes raises the following claims in the instant 28 U.S.C. §2254 motion: 1) his guilty plea was not entered knowing and voluntarily; 2) the prosecutor breached the terms of the plea agreement by recommending a presentence investigation report and a sentence in excess of the plea agreement; 3) the trial court intimidated Grapes so that he did not request a continuance to obtain counsel; 4) the prosecutor committed misconduct by offering to recommend a sentence he knew the judge would not

4

honor; 5) the presentence investigation report contained incorrect information; and 6) the sentencing judge improperly relied on an inaccurate presentence investigation report. Pet. Grounds 1-7. The Court will address each claim presented individually.

### A.   Plea was not Entered Knowingly and Voluntarily

Petitioner did not challenge whether his plea was knowingly and voluntarily entered when he filed for leave to appeal his guilty plea. *See* Resp. Ex. 4.  Plaintiff did, however,  present this claim in his petition for post-conviction relief before the Circuit Court for St. Mary's County, and it was denied on its merits. Resp. Ex. 6-9. Grapes did not seek leave to appeal the ruling.  Under these facts, the claim is procedurally defaulted.

Further, even if consideration of this claim were to have proceeded to the merits, Grapes presents no cause to disturb the ruling of the state court. The state post-conviction court's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. *See Williams,* 529 U.S. at 412-413.  The post-conviction court's decision that was not based on an unreasonable determination of the facts in light of the evidence presented.  *See id.*  In its decision, the state post-conviction court reviewed the transcript of the plea colloquy. The relevant portions are summarized below:

> THE COURT: The State's Attorney has indicated that you wish to give up your, important, legal, and constitutional rights and enter a plea of guilty to an amended Count 2 in Criminal 02–397, which charges that on or about and during the period of November 3, 2001 through November 4, 2001, at Mechanicsville, St Mary's County, Maryland, you did steal the personal property of Jackie Rose Langeluttig, having a value of greater than $500, in violation of Article 27,  Section 342 of the Annotated Code of Maryland.  In other words, it charges felony theft, which carries a maximum term of fifteen years incarceration, a maximum fine not to exceed $2,500.  Now, I'm told that's what you're pleading to, is that correct?
>
> THE DEFENDANT:  Yes sir.
>
> THE COURT:  And you understand that you had that right?
>
> THE DEFENDANT:    Yes sir.

5

THE COURT:  But you have appeared in court this morning without counsel, and as such, I take it you have determined to give up your right to counsel and represent yourself?

THE DEFENDANT:  Yes sir.

THE COURT:  Why did you do that?

THE DEFENDANT:  I am currently incarcerated at Charles County Detention Center.  I just got on work release, that's why I was allowed to come here today on my own behalf. And, basically, its just been a hassle to get them to come down here to get me a Public Defender.  And in Charles County Detention Center, the only way you make a phone call is collect.

THE COURT:  Okay.  But you have received the notice that a lawyer could be helpful to you by explaining the charges and the charging document?

THE DEFENDANT:  Yes sir.

THE COURT:  Telling you the possible penalties, helping you at trial, helping you protect your constitutional right, and helping you to get a fair penalty if convicted?

THE DEFENDANT:  Yes sir.

THE COURT: But you're telling me that, no, you don't want a lawyer, you are going to represent yourself, you are going forward with this case; is that correct?

THE DEFENDANT:  Yes sir.

THE DEFENDANT:  That's correct, Your Honor.

THE COURT:  All right.  As such, Mr. Grapes, you would be entitled to have a jury trial or a non-jury trial, either one at your election. By proceeding with a guilty plea at this time, of course, you are giving up both types of trials. You understand that?
THE DEFENDANT:  Yes sir.

THE COURT:  On the other hand, if you elected to have your case tried by the Judge without a jury, in order for you to be convicted, the State would have to prove you guilty beyond a reasonable doubt.  And if the State couldn't do that, then you would have to be acquitted.  You understand that?

THE DEFENDANT: Yes sir.

THE COURT: But you are giving- - willing to give up both types of trial rights

6

that you have?

      THE DEFENDANT:  Yes sir.

      THE COURT: And, in addition to that, you are giving up the most fundamental right, which is forcing the State to prove you guilty beyond a reasonable doubt?

      THE DEFENDANT: Yes sir.

      THE COURT:  During the course of any trial, if you had one, you would have had the right to confront and cross-examine your accusers, call your own witnesses, testify in your own defense.  But when you plead guilty, you give up those rights as well.  You are sure you want to do that?

      THE DEFENDANT: Yes sir.

Statement of Reasons and Order of the Court, Resp. Ex. 9 at 4-6; *See also* Plea Transcript,  Resp. Ex.

2 at 3-6;   The state post-conviction court ruled as follows:

     Maryland Rule 4-242(c) provides:

> The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily ,with understand of the nature of the charge and consequences of the plea; and (2) there is a factual basis for the plea... the court may accept the plea of guilty even though the defendant does not admit  guilt.

     This rule expressly and unambiguously indicates that, "before the trail [sic] court may accept a guilty plea, it must determine on the record that the defendant understands the nature of the charges and the consequences of the plea, that the plea is a voluntary one, and that a factual basis  supports the plea." *State v. Parker*, 160 Md. App. 672, 866 A.2d 885, (2005); *see also State v. Hicks*, 139 Md. App. 1, 11, 773 A.2d 1056 (2001).

     To be considered voluntary, "the plea must not be entered through coercion, terror, inducements, or subtle or blatant threats." *Holloway v. State*, 8 Md. 621, 261 A. 2d  812 (1970).

     The Court articulated its position by stating that the test for a knowing and voluntary plea is "whether, considering the record as a whole, the trial judge could

fairly determine that the defendant understood the nature of the charge to which he pleaded guilty." *Davis v. State*, 278 Md. 103, 361 A. 2d 113 (1976) (holding that *Boykin v. Alabama*, 395 U.S. 238 (1969) does not require specific reference to the waiver of the three rights highlighted by Justice Douglas before a guilty plea may be effectively accepted by the trial court. The three rights were (1) privilege granted against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of Fourteenth, (2) right to trial by jury, (3) right to confront one's accusers). The court in *Davis* modified its prior holding that strict compliance with *Boykin* was required, by now holding that 'substantial compliance' was sufficient where the 'constitutional privilege against self-incrimination has been adequately identified and verbalized in non-technical language.'

Finally, Petitioner relies heavily on *Edwards v. State*, 32 Md. App. 398, 361 A.2d 131 (1976), which holds "where, inter alia, trial court [sic] did not question defendant or his counsel as to whether defendant's plea of guilty was voluntary and where no information was elicited from defendant as to whether, apart from the plea bargain, his plea was the result of any improper promises, threats, or inducements and the trial court did not make a finding that the plea was either voluntarily or intelligently entered, applicable [sic] standard for acceptance of guilty plea was not met." The *Edwards* case did come after the *Davis* case, however, it did not overrule *Davis*. The court still holds for the notion that the voluntariness of a defendant's plea must be clearly established by the record taken as a whole to show that it affirmatively discloses that defendant's plea was, as found by the trial judge, to be voluntary and intelligent.

Statement of Reasons and Order, Resp. Ex. 9 at 2-4.

The Circuit Court, sitting as the post-conviction court, determined that the trial court "went through the nature of the charges and the consequences of the plea with the Petitioner. *See id*. at 7. It noted that the trial judge questioned Grapes at length regarding his right to have an attorney present. *See id.* The trial court also explained the State's burden of proof were a trial to take place, the right to confront his accusers and call his own witnesses, and the right to testify in his own defense. *See id.*

The post-conviction court thus concluded:

Clearly, Petitioner had full opportunity to tell the Court if he did not want to enter his plea. If Petitioner felt that he was being coerced, he could have told the Court that he did not want to continue with the plea. Petitioner gave no indication that his plea was the result of threats, promises, coercion, or inducements from any person. Therefore, it must be concluded that Petitioner's plea was entered knowingly and voluntarily and that there were no threats or inducements that caused him to plead

guilty.

A plea of guilty is only constitutionally valid to the extent it is a voluntary and "intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970); *Beck v. Angelone*, 261 F.3d 377, 394 (4th Cir. 2001) (recognizing that a plea of guilty must constitute a voluntary and intelligent choice among alternatives). The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Beck*, 261 F.3d at 394. "In applying this standard, courts look to the totality of the circumstances surrounding the guilty plea, ... granting the defendant's solemn declaration of guilt a presumption of truthfulness." *Id*. (internal citation omitted). "The Constitution requires the circumstances to reflect that the defendant was informed of all the direct consequences of his plea." *Id*. "A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him." *Id.*

Based on the totality of the circumstances, the post-conviction found the plea was entered knowingly and voluntarily.  In light of the deferential standard of review applicable to 28 U.S.C. § 2254 proceedings, this claim provides no basis presented for federal habeas corpus relief.

### B.   Terms of the Plea Agreement

Grapes next claims the prosecutor breached the plea agreement by recommending a presentence investigation report and a sentence in excess of the plea agreement.  Petition at Grounds Two and Three. Grapes contends the State's Attorney breached the plea agreement by recommending a sentence in the guidelines range that was higher than the guidelines range contained in the plea agreement.

Neither contention was fully presented in the highest state court with jurisdiction to consider it.[5] Consequently, both claims are procedurally defaulted.  Further, were consideration of these claims to proceed to the merits, there is no basis for relief under 28 U.S.C. § 2254.

Grapes claims that the prosecutor told him he was in the 4-8 year guideline range.[6]  According to Grapes,  the prosecutor agreed:  not to request a pre-sentence investigation report; to advise the sentencing Court that the applicable guidelines were 3-7 years; and to decline offering a sentencing recommendation.[7]  Statement of Reasons, Resp. Ex. 9 at 9.  After review of the sentencing transcript, the post-conviction court determined that the State had not requested a pre-sentence investigation. Rather, it was the trial judge who  "took it upon himself to order one."  *Id*; *see also* Sentencing Transcript, Resp. Ex. 3 at 9.

The post-conviction court then examined whether the State had made a recommendation at sentencing and whether the state advised the Court that the guidelines were 3-7 years. After reviewing the sentencing transcript, the post-conviction ruled that the State did not offer a sentencing recommendation.  *See id.* at 13; *see also* Sentencing Transcript, Resp. Ex. 3.  In regard to whether the

_____

[5]        Neither claim was presented in the application for leave to appeal the entry of the guilty plea.  Resp. Ex. 4.  Both claims were raised in the post-conviction petition and later denied on their merits.  As previously noted, Grapes did not file an application for leave to appeal the decision.

[6]        At the post-conviction hearing, Grapes claimed the prosecutor told him he was in the 3-7 years guideline. Post-conviction Hearing Transcript, Resp. Ex. 8 at 9-10; Post-conviction Petition,  Resp. Ex.  6 & 7 at 4. In fact, Grapes argued the main inducement for entering the guilty plea was his knowledge that his sentencing range was between 3-7 years.  Resp. Ex. 7 at 4.  Grapes does not address this disparity.

[7]        As part of the plea bargain charges of First Degree Burglary and Malicious Destruction of Property were *nol prossed*. Statement of Reasons, Resp. Ex. 9 at 9.

State had advised the Court about the 3-7 year guideline range, the post-conviction court stated:

> This part of the plea bargain is actually in dispute by the State. At the post-conviction hearing, Mr. Stanalonis, attorney for the State, testified that he did indeed have a conversation with the Petitioner in which he advised the Petitioner that he could receive 7-15 years for the first degree burglary and 4-8 years for the theft over $500. He came up with these figures based on the information that the Petitioner provided him regarding his criminal record.  Stanalonis advised the Petitioner that these were guidelines based on his calculations of what he though Petitioner's criminal record to be.  Stanalonis stated that he told the Petitioner that if other information came forward as to his criminal record, the guidelines could go up or down and that Judge Raley never accepts binding pleas.
>
> Mr. Stanalonis further testified at the post-conviction hearing that he never told the Petitioner that he could get 3-7 years for the theft charge.  The first time Mr. Stanalonis ever heard of that amount of time was at the sentencing when Petitioner's attorney, Mr. Mattingly, mentioned it.  However, at the sentencing, Parole found a violation of probation to add to Petitioner's criminal background, raising the guidelines, which put this Petitioner in the 8-15 years category, instead of 4-8 years.  Due to his extensive criminal background, Judge Raley [sic] found it proper to place the Petitioner in middle of the guidelines when he gave him 10 years.

Statement of Reasons and Order, Resp. Ex. 9 at 14-15.[8]  Based on the above, the post-conviction court found the claim without merit.  Noting that Grapes never mentioned the possibility of a 4-8 year sentence at the plea hearing, and neither Grapes nor his counsel raised this issue at sentencing, the Circuit Court found no evidence that the State had promised a sentence in the 4-8 year guideline range. *See id.*

The state court's decision is supported by the record.  In light of the highly deferential standard for evaluating state-court rulings, there would be no basis to find the state's adjudication on the merits resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented.  This claim  presents no basis for federal habeas relief under

28 U.S.C. § 2254.

### C.   Claim that Trial Judge Intimidated Grapes

Grapes contends that when he appeared before the court on March 3, 2003, the date he entered

his guilty plea, he had actually intended to seek a continuance to employ counsel. Petition at Ground

Four.   According to Grapes, the trial judge addressed "everyone in the court, stating that,

'no continuance will be granted, so don't ask.'  Therefore defendant [Grapes] did not ask for said

continuance for fear of repercussion." *Id.* [9]

This claim was not raised before the state court in Grapes's application for leave to appeal his

guilty plea or in any state post-conviction proceeding.  Consequently, it is procedurally defaulted.  For

this reason, the claim will be dismissed.

### D.      Prosecutorial Misconduct

The next claim is that the prosecutor knew that the trial court would not honor the plea

agreement.  Petition, Suppl. Page at  Ground 5.   This claim was neither raised in Grapes's application

for leave to appeal his guilty nor in any state post-conviction proceeding and it is procedurally

defaulted. [10]

### E.   Presentence Investigation Report

_____

[9]      This Court is unable to find any evidence in the record suggesting that Grapes was
intimidated or expressed an intention to obtain counsel at the plea hearing.

[10]      As discussed above, the prosecutor testified during the post-conviction hearing that
he told Grapes the trial judge never accepted binding plea agreements. Post-conviction Hearing
Transcript, Resp. Ex. 8 at 14, 35.  He told Grapes that the guidelines based on his calculations of
what he thought Petitioner's criminal record to be.  The prosecutor also testified that he told Grapes
that if other information came forward as to his criminal record, the guidelines could go up. *See
infra* p. 11.

Lastly, Grapes advances two claims in regard to the Presentence Investigation Report. First, he asserts that the Presentence Investigation Report was incorrect. Second, he contends the sentencing court improperly relied on the inaccurate report. The state post-conviction court rejected these claims as follows.

> Petitioner's final contention is that his sentencing guidelines were calculated incorrectly, thereby giving him an incorrect sentence. According to Petitioner's Pre-Sentence Investigation report, he was given an Offender Score of seven. One point due to the fact that he was under court supervision at the time of this offense, five points for being a major offender, and one point since he had a prior adult parole or probation violation. The seven total points placed Petitioner in the guidelines ranging from 8-15 years.

> * * * * * * * * * * * * *

> Petitioner argues that the score making him a major offender was calculated incorrectly. Petitioner had a total of seven counts of housebreaking on a disposition date of March 27, 1989. Petitioner claims that six of these seven counts should have been grouped together as one count of housebreaking. However, Parole and Probation, in their pre-sentence investigation, calculated this differently. Because there are seven separate case numbers, Parole calculated these as seven separate counts of housebreaking. In addition, Petitioner was sentenced for an additional count of housebreaking on February 22, 1989 and on February 15, 1994. Additionally, Petitioner has been sentenced for Assault in the 2nd degree, Credit Card/False Charged over $500, Escape from Confinement, Theft under $500, Driving without a License, Driving on a learner's permit without supervision, and four separate counts of Driving while suspended, all between the years of 1988 through 2002. All of these added together make this Petitioner a Major Offender, thereby properly placing his sentencing guidelines between 8-15 years.

> Regardless of what the sentencing guidelines were, the Court is not obligated to adhere to them. The Court, in its discretion, can impose a sentence that is higher or lower than the recommended sentence, so long as the Court does not abuse its discretion. "Nothing in the law requires that guidelines sentences or principles be applied; they complement rather than replace the exercise of discretion by the trial judge... Nor is it an impermissible consideration, within the contemplation of our cases, for a trial judge not to apply the guidelines, or to apply them improperly." *Saenz v. State*, 95 Md. App. 238, 251, 610 A.2d 401, 408 (1992), quoting *Teasley v. State*, 298 Md. 364, 370-71, 470 A.2d 337, 340 (1984). Therefore, this contention fails.

Statement of Reasons and Order, Resp. Ex. 9 at 15-16.

Absent a violation of a federal constitutional right or provision, these claims are not cognizable in a § 2254 proceeding. *See* 28 U.S.C. § 2254(a). Grapes's claims are predicated on matters of state law, and they are not cognizable here. *See Estelle v. McGuire*, 502 U.S. 62, 67-75 (1991) (federal habeas relief not available for errors of state law). In this case, the state post-conviction court determined the guidelines were properly applied, noting that guideline calculations are discretionary. Statement of Reasons and Order, Resp. Ex. 9 at 15-16. The 10-year sentence imposed was well below the 15-year maximum sentence.[11] Lastly, Grapes did not appeal the post-conviction court's denial of his claims. As such, they are procedurally defaulted. In summary, these claims provide no basis to award relief under 28 U.S.C. § 2254.

For the above reasons, the Court will deny and dismiss the 28 U.S.C. § 2254 motion. An Order consistent with this Memorandum Opinion follows.

/s/
PETER J. MESSITTE
September 20, 2006                                      UNITED STATES DISTRICT JUDGE

---

[11]     The trial court informed Grapes at the plea hearing that he faced a maximum fifteen-year sentence. Resp. Ex. 2 at 3.

14